# IN THE UNITED STATES COURT EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | |
|---|---|
| COBY MOON, <br><br>       Plaintiff, <br><br> v. <br><br> SCOTT COLLINS, CITY MANAGER FOR THE CITY OF FAYETTEVILLE, TENNESSEE, in his individual capacity, <br><br>       Defendant. | ) ) ) ) ) ) ) ) ) ) ) )    **Case No.** _____ <br>    **JURY DEMAND** |

---

## VERIFIED COMPLAINT

---

This is a civil action for damages brought pursuant to 42 USC §1983, 42 USC §1985, 42 USC §1988, and Title VII of the Civil Rights Act of 1964, as amended through 1968, 8 USC §2000 e-2 ©(1) concerning a constructive retaliatory discharge in connection with protected activities, all in violation of public policy.

### I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction of this action pursuant to the provisions of 28 USC §1331 and §1343, as well as the Fifth and Fourteenth Amendments to the United States Constitution, and, as to the claim brought under the laws of the State of Tennessee, pursuant to this Court's pendent jurisdiction.

In compliance with 42 USC §2000(e), et seq., Plaintiff has filed a charge of discrimination with Equal Employment Opportunity Commission, ("EEOC") and he has complied with the conditions preceding to the commencement of this action. He received his notice to sue rights in accordance with 42 USC §2000(e), et seq., from the EEOC shortly after the date of the lettered notice

of November 26, 2019, and therefore this action is timely filed. A copy of said letter is attached hereto as Exhibit A.

## II.     PARTIES

2.      Plaintiff is and was at all times relevant hereto a citizen and resident of Fayetteville, Lincoln County, whose residence address is 47 Grays Lane, Fayetteville, Tennessee 37334.

3.      Defendant Scott Collins is a resident and citizen of Tennessee and can be served at the City of Fayetteville City Hall.

## III.     FACTS

4.      In January of 2018, Plaintiff became the interim fire chief for the City of Fayetteville Fire Department with the retirement of the then fire chief.

5.      In the month of January, Plaintiff presented Defendant Collins with the issue of the City's failure to pay its firemen overtime resulting in owed backpay. Defendant Collins responded that he would look into it.

6.      In May of 2018, Plaintiff became officially the fire chief of the City of Fayetteville.

7.      In December of 2018, to a large degree due to the efforts of Plaintiff, the City was forced to pay out to its firemen approximately ninety ($90,000.00) thousand dollars in back due overtime pay.

8.      From the time of Plaintiff's appointment as interim fire chief through February 18 of 2019, there were no personnel issues that resulted in the filing of any grievance or complaint or write-ups dealing with any employee of the Fayetteville Fire Department.

9.       On or about February 14, 2019, Plaintiff arrived at Station One at approximately 6:00 p.m. to find all of the firefighters on that shift outside talking with Defendant Collins. Plaintiff asked Defendant Collins what was going on, to which Collins replied that he saw the men standing outside and he pulled in.

10. Plaintiff, concerned, attempted to reach Fireman Trent Spray by phone to try to find out what had transpired to no avail. Shortly thereafter, Defendant Collins called Petitioner and told him that there were concerns but nothing they couldn't work through, and not to bother the other firemen about it.

11. On or about February 15, 2019, Firemen Trent Spray contacted Plaintiff and told him that they (the firemen) were told by Collins not to speak to Plaintiff about their discussion, and that if they did speak to Plaintiff about Collins concerns, they would get in trouble or fired.

12. On or about February 18, 2019, Plaintiff was notified at approximately 8:00 a.m. of a meeting with Respondent Collins that he was to attend at 10:00 a.m.

13. Plaintiff attended this meeting and was handed a letter of suspension by Defendant Collins. Plaintiff asked why he was being suspended and Collins told him it was so he would not curse his men. Plaintiff responded by telling Defendant Collins though he cursed in the presence of his men, he did not curse any person. A copy of the letter of suspension is attached hereto and incorporated herein by reference.

14. Plaintiff had recently filled an empty position by hiring a new firefighter. Collins said to Plaintiff that he thought he had been told that Plaintiff hired the most qualified man for the open position. Plaintiff, who had previously discussed his options with Defendant Collins, told him that he hired the man who gave the best interview. Plaintiff avers that it was part of his role as fire chief to hire and fire employees of the fire department.

15. Plaintiff had sought and obtained authority to purchase security cameras to put up to protect the facility and the equipment. These cameras also were equipped with the ability to audio record. The City's technician installed the cameras and knew of the audio recording capability. Defendant Collins, at the February 18 suspension meeting, asked Plaintiff if he didn't activate the audio

function on the cameras, to which Plaintiff replied that he had done so with the IT Director, Jerry Taylor's knowledge and acquiescence.

16. At said meeting, Defendant Collins also waved a piece of paper in Plaintiff's face and told him that it represented 31 complaints made by Plaintiff's men against him. The grievance procedure set out in The Policy Manual at pages 32 and 33 was not followed. At hearing on May 31, only one firefighter testified, and identified no wrongs on the part of the Plaintiff. Plaintiff was never presented with a copy of the alleged grievance, and was not made aware of any of the allegations prior to his suspension in violation of The Manual at page 32, J.

17. Plaintiff avers that pursuant to the personnel policy manual at Page 19-20 under J: Probation Period, if his performance was deemed unsatisfactory and/or he did not meet the initial test requirements, he should have undergone an evaluation, not a suspension.

18. Plaintiff avers that Defendant Collins either himself contacted several news stations or caused them to be contacted. These news stations reported that Plaintiff had been suspended for installing cameras in the fire department and had been secretly recording the firemen. It was also reported that some purchases made by Plaintiff had been called into question. Plaintiff avers that his purchase of the security cameras with audio recording capability had been approved by the city council. Further, Plaintiff avers that no audio recordings of any men were made inside the living quarters as no cameras were installed in the living quarters. Further, Plaintiff avers that no purchasing issues were ever raised with him and he has no knowledge of what issues were being alleged.

19. On or about February 21, 2019, Plaintiff attended a scheduled meeting with Defendant Collins and was told that he would either voluntarily resign or be terminated, stating to Plaintiff that if he resigned, he, Collins would not initiate a TBI investigation into the camera issue.

20. Plaintiff, having no idea why or for what reason Defendant Collins threatened a TBI investigation concerning the security cameras, and feeling threatened, believed he had no option other

than to resign. Defendant Collins presented Plaintiff with a pre-prepared letter of resignation which Plaintiff signed after asking to speak to his wife first. Defendant Collins gave him five minutes to do so. Plaintiff avers that the Personnel Policy Manual at pages 33-M called for a hearing on his suspension upon his written request within ten (10) days prior to termination. This did not occur. A copy of the letter of resignation is attached hereto and incorporated herein by reference.

21. On or about February 22, 2019, Petitioner submitted a timely letter requesting an appeal of his suspension, and as provided by the Personnel Policy Manual at M on Page 33 of said manual. On the same day, Plaintiff received his last paystub showing retirement, life insurance, health insurance, cancer insurance, dental insurance, and visual insurance all has having been deducted. A copy of this referenced letter is attached hereto and incorporated herein by reference.

22. On or about February 25, 2019, Plaintiff was contacted by Adrian Gay, the then HR Coordinator for the City who had advised that Plaintiff could retire using sick time for early retirement.

23. An appeal hearing was scheduled for February 27, 2019 and was subsequently continued to allow Plaintiff's counsel to be present. A complete copy of the transcript of this portion of the hearing is attached hereto and incorporated herein by reference.

24. On the same day, Thursday, February 27, 2019, post-hearing, Plaintiff learned from Adrian Gay with HR that, unlike others before him, including Danny Travis and Steve Spray, he would not be able to get his remaining sick time paid out.

25. Thereafter, on March 26 and 29 of 2019, Plaintiff attempted to contact Adrian Gay regarding when his benefits would cease. He never received a return phone call. Ms. Gay has subsequently been terminated from her employment with the City of Fayetteville.

26. On or about March 30, 2019, Plaintiff received a letter from the Tennessee State Department of Finance indicating that his benefits, which also covered his children, terminated on February 28, 2019.

27. On or about April 2, 2019, Plaintiff and his wife received a fax from the City indicating termination of their health coverage. As a result, Plaintiff's children had no health coverage from March until May of 2019.

28. On or about April 4, 2019, two TBI agents appeared unannounced at Plaintiff's home to interview him concerning "wiretapping". Plaintiff was contacted by telephone while the TBI were in still Plaintiff's driveway, and were given Plaintiff's attorney's name and number to set up a meeting.

29. On or about April 29, 2019, the two TBI agents met with Plaintiff and counsel at counsel's law offices in Winchester, Tennessee. Subsequent to that meeting, Plaintiff has heard nothing more from these agents, or any other agents associated with the TBI, or any other policing agency. This TBI investigation was apparently completed with no charges being brought against Plaintiff.

30. On or about May 31, 2019, Plaintiff and counsel appeared for the continued appeal hearing at Fayetteville City Hall. Plaintiff avers that none of the pretextual grounds for his suspension and ultimate forced termination were substantiated at this hearing. A complete copy of the transcript of this hearing is attached hereto and incorporated herein by reference.

31. On or about June 14, 2019, Plaintiff received a letter from Defendant Collins upholding his original decision of suspension in response to the appeal hearing. A copy of this referenced letter is attached hereto and incorporated herein by reference.

## COUNT 1
### Retaliatory and Wrongful Constructive Termination

32. Plaintiff reasserts and incorporates herein by reference as fully restated herein the averments set forth at Nos. 1 through 32 herein above.

33. The Final Determination rendered following the appeal hearing was granted upon false, fictitious and flagrantly pretextual grounds and should be set aside. Plaintiff avers upon information and belief that Defendant Collins retaliated with Plaintiff's suspension and premature forced

resignation/termination as the result of Plaintiff's successful efforts in obtaining back due and unpaid overtime pay for his fire department employees totaling approximately ninety ($90,000.00) thousand dollars at the end of December of 2018, a protected activity.

34. The constructive retaliatory and wrongful discharge was affected at a time not in keeping with procedure as set out in the Personnel Policy Manual and should therefore be set aside.

35. As a result of the foregoing, Plaintiff should be awarded those sums necessary to compensate him for the loss of City benefits and insurance coverage.

36. Plaintiff avers that all sums including those of back pay, denied sick leave pay, and other monies due and owing should be awarded to Plaintiff.

37. Plaintiff has suffered monetarily as well as mentally and emotionally as a result of the acts of Defendant Collins, such that Plaintiff should be awarded damages commensurate therewith and commensurate with any statutory limit thereof.

**WHEREFORE, AND IN FURTHERANCE OF THE FOREGOING, PETITIONER PRAYS:**

1. That all due process be issued and served upon the named Defendant and that they be required to answer under oath in the time allowed by law;

2. That Plaintiff be awarded damages for discrimination, wrongful, constructive retaliatory discharge, including lost wages and employment benefits, future lost wages, loss of earning capacity, loss of enjoyment of life, damage to reputation, embarrassment, loss of self-esteem, emotional distress, fear, anxiety, and depression in the amount of five-hundred thousand dollars ($500,000.00) for compensatory damages;

3. That punitive damages be awarded in a like amount of five-hundred thousand dollars ($500,000.00);

4. That Plaintiff be awarded post-judgment interest, attorney's fees, discretionary costs, and the cost of this cause;

5. That this case be tried by a jury;

6. That Plaintiff have all appropriate general relief to which he may be entitled.

Respectfully submitted:

RUSSELL L. LEONARD, #014191
*Attorney for Plaintiff*
1016 West Main Street, Suite 3
Monteagle, Tennessee 37356
(931) 924-0447
rleonardlegal@gmail.com

## **VERIFICATION**

**STATE OF TENNESSEE** )
**COUNTY OF** FRANKLIN )

I, Coby Moon, after first being duly sworn according to law make oath that I have read the foregoing Verified Complaint and that the facts set forth therein are true to the best of my knowledge, information and belief.

COBY MOON, Plaintiff

Sworn to and subscribed before me
This 21st day of February, 2020.
Notary Public: _____
My Commission Expires: 5-6-23